[L. A. No. 2435. Department One.—December 18, 1909.]

## L. E. WAIT, Appellant, v. KERN RIVER MINING, MILLING, AND DEVELOPING COMPANY, Defendant and Respondent, and FRED G. LATHAM, Defendant.

CORPORATION—SITUS OF SHARES OF STOCK—RESIDENCE OF CORPORATION.— The *situs* of shares of stock in a corporation, as to any authorized proceeding to subject the stock to the lawful claim of another, whether that claim be one of ownership of the property or of a right to specific enforcement of a contract relative to it, is within the state where the corporation resides. That state is ordinarily the state by or under the laws of which the corporation was created.

ID.—CORPORATION CREATED TO DO BUSINESS IN ANOTHER STATE—BUSINESS AND PROPERTY ENTIRELY IN OTHER STATES.—A corporation, organized under the laws of a foreign state, for the exclusive purpose of doing business in California, where its entire property is situated and all. its business transacted, will be deemed to be a resident of California, to an extent sufficient to bring it within the rule applicable to domestic corporations as to the *situs* of its stock. As to such a corporation, the fiction as to the *situs* of the corporation entity being in the state of its creation ought to yield in the interest of justice to the actual facts.

ID.—SPECIFIC PERFORMANCE — CONTRACT TO DELIVER STOCK.— ACTION AGAINST NON-RESIDENT—SERVICE OF SUMMONS.—One who is entitled

to the delivery of a certain number of shares of the stock of such a corporation, under a contract with the owner thereof, all the conditions of which to be performed by him have been performed, and concerning which nothing remains to be done by the owner other than the mere delivery of the stock, may maintain an action in this state for specific performance of the contract against the owner, notwithstanding the owner is a non-resident, and cannot be personally served with summons.

ID.—PROCEEDING IN REM—JURISDICTION—SERVICE BY PUBLICATION.— Such action being merely to enforce the delivery of property within the jurisdiction of the courts of this state is in the nature of a proceeding *in rem*, and sufficiently so to give the courts of this state jurisdiction to render judgment directing the delivery, as against the non-resident owner, who has been served merely by publication of summons.

ID.—CONTRACT THAT MAY BE SPECIFICALLY ENFORCED—INADEQUACY OF DAMAGES.—The right of a court of equity to decree specific performance does not turn at all upon the question whether the contract relates to real or personal property, but altogether upon the question whether the breach complained of can be adequately compensated in damages.

ID.—CONTRACT TO TRANSFER PERSONAL PROPERTY—PLEADING INADE-QUACY OF LEGAL REMEDY.—The presumption being that an agreement to transfer personal property can be so compensated, it is incumbent on one seeking specific performance in equity to allege facts showing the inadequacy of the legal remedy of damages. It is not necessary in terms to allege the inadequacy of the legal remedy; if the facts alleged and proved sufficiently show the inadequacy, it is enough. If the property is of such a nature that the value of the performance cannot be estimated in money with any degree of certainty and taken in lieu of it, the inadequacy of the legal remedy is apparent.

ID.—CONTRACT TO DELIVER SHARES OF STOCK IN MINING CORPORATION— ABSENCE OF MARKET VALUE OF STOCK—UNKNOWN VALUE OF COR-PORATION'S PROPERTY.—The complaint in an action to specifically enforce a contract for the delivery of shares of stock in a mining corporation sufficiently alleges the inadequacy of the legal remedy of damages, when it shows that the entire property of the corporation consisted of certain mining claims of unknown value, and facts from which it is apparent that the stock could not have had an established market value at the time of the commencement of the action.

ID.—PLEADING—FAIRNESS OF CONTRACT—ADEQUACY OF CONSIDERATION. —The complaint in such action need not allege *in hæc verba* that the contract was supported by an adequate consideration and is as to the defendant fair and just; it is sufficient to set forth facts from which the court is warranted in concluding that the consideration was adequate and the contract fair and just as to the defendant.

Id.—Services in Selling Stock of Corporation—Contract by Stock-
holder to Give Individual Stock.—The court is warranted in
drawing such conclusion, where the complaint alleged, and the
court found, that the contract sought to be specifically enforced
was one whereby the defendant, a stockholder in a mining cor-
poration, the stock of which had no market value and the entire
property of which consisted of mining claims of uncertain value,
promised to give one half of his stock to the plaintiff in con-
sideration of his going into a distant state and selling a substan-
tial amount of the treasury stock for the purpose of obtaining
money to enable the corporation to continue its work, and that the
plaintiff performed the contract on his part, being engaged in so
doing for a period of over six months, during which time the
defendant never intimated to him that he thought the consideration
inadequate or the contract in any way unfair or unjust.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial. N.
P. Conrey, Judge.

The facts are stated in the opinion of the court.

Murphey & Schmidt, for Appellant.

Anderson & Anderson, for Respondent.

ANGELLOTTI, J.—This action was brought to obtain a
decree that plaintiff is the owner of two hundred and forty-five
thousand shares of stock of the defendant corporation, and
that the defendants have and hold the same in trust for the use
and benefit of plaintiff, and requiring said corporation to issue
to plaintiff said two hundred and forty-five thousand shares.
Defendant Latham having prior to the institution of the action
absconded and left the state of California and his whereabouts
being absolutely unknown, the only service of summons had
upon him was by publication. He did not appear in the action.
Defendant corporation answered, and the trial of the action
was had as between it and plaintiff. The findings were sub-
stantially in favor of plaintiff upon all material issues except
that of ownership of the stock, the court finding that it is not
true that plaintiff is now, or ever was, the owner of said two
hundred and forty-five thousand shares of stock. The court
concluding, as matter of law, that plaintiff was not such owner,
and further that the court had never acquired jurisdiction of

the person of defendant Latham, adjudged that plaintiff take
nothing by his action, and that defendant corporation recover
its costs of action. A motion for a new trial on the part of
the plaintiff was denied. Plaintiff appeals from the judgment
and from an order denying his motion for a new trial.

The motion to dismiss the appeals was denied by the court
when the case was called for oral argument.

Defendant corporation is a corporation organized and exist-
ing under the laws of the territory of Arizona, but all of its
property is situate and all of its business carried on in this
state, and it has its office in the city of Los Angeles. It was
organized by Latham, the purpose thereof being the develop-
ment and handling of certain mining claims in Kern County
owned by him, and upon the facts set forth we are warranted
in assuming that the sole purpose of its formation as stated
in its articles of incorporation was the carrying on of business
in the state of California. These mining claims were trans-
ferred by him to the corporation upon the understanding that
one million of the two million of the shares of stock thereof
should be owned and held by him and his associates, while
the other one million should be set aside as treasury stock,
to be sold for the purpose of raising a fund with which to
develop the property. Of his one million shares, five hundred
thousand were to be issued as demanded by him to himself or
any other person, and the other five hundred thousand were
issued to certain persons at his request. In May or June,
1903, Latham employed plaintiff to go to Chicago and en-
deavor to sell fifty thousand shares of the treasury stock
at ten cents per share, and promised that if he sold the same
or any considerable portion thereof at that price "he would
pay to plaintiff for his services" in making said sales two
hundred and fifty thousand shares of his own stock, and also
would see that the corporation paid him a certain commis-
sion on all stock sold. Latham thereupon caused five thousand
shares of his two hundred and fifty thousand to be issued to
plaintiff, and the corporation agreed to pay him certain com-
missions and his expenses, a portion of which he has received.
Plaintiff thereupon went to Chicago, and remained there until
February, 1904, when he was recalled to California, and there-
after remained in California in the performance of service
for the corporation. He had then obtained purchasers for

about seventeen thousand shares at the designated price and the sales thereof had been made and the proceeds sent to Latham, who was the president of the corporation. What plaintiff had done in Chicago was entirely satisfactory to Latham and was "accepted by him as full performance of said agreement." Latham subsequently absconded and left the state, without having caused any of the two hundred and forty-five thousand shares due plaintiff to be issued to him and without having delivered to him any of the stock agreed to be delivered except five thousand shares. Of Latham's original five hundred thousand unissued shares, more than two hundred and forty-five thousand shares have never been issued by the corporation to Latham or anyone else. These facts were found by the trial court and there is no sufficient specification of insufficiency of evidence as to any of them.

Defendant corporation was, of course, a mere trustee as to such of Latham's shares of stock as remained unissued, being entitled simply before being compelled to issue the same to any other person to be protected against any subsequent claim therefor by Latham. Its only other claim in regard thereto intimated by the record was a claim that it had a lien thereon for money which it claimed Latham had embezzled from it, but this may here be disregarded in view of the fact that the merits of such claim do not appear to have been determined by the trial court. The theory of plaintiff is that by virtue of his performance of the terms of the agreement between himself and Latham, he became the owner in equity of two hundred and forty-five thousand shares of Latham's unissued stock, with the consequent right to have the certificate for the same issued to him by the corporation, or at least, if he was not such owner, that he had such an interest in or lien on the stock as would warrant the relief sought against the corporation, even though by reason of his non-residence personal service had not been made and cannot be made on Latham.

While Latham was undoubtedly a necessary party to this action, we are of the opinion that the constructive service of summons upon him was effectual to give the lower court jurisdiction to determine the rights of plaintiff against him so far as the disposition of any of the shares of the stock in question is concerned.

It does not appear to be questioned that the legal *situs* of the shares of stock constituting the subject-matter of this action is, for all purposes material here, in this state. It is well settled that for purposes of execution or attachment, the *situs* of shares of stock is within the state where the corporation resides, and that they may lawfully be levied on in such state though owned by a non-resident. We can perceive no reason why the rule as to *situs* should not be the same as to any authorized proceeding to subject the stock to the lawful claim of another, whether that claim be one of ownership of the property or of a right to specific enforcement of a contract relative to it. In other words, wherever such stock constitutes the subject-matter of an action, we see no reason why it should not be held to be within the state where the corporation resides. That state is ordinarily, of course, the state by or under the laws of which the corporation was created. Defendant corporation was, as we have seen, organized under the laws of Arizona. But for all practical purposes, according to the record, it is a California corporation. Its contemplated business was all to be transacted in this state, all of its property is here and it does business nowhere else. As was said by Judge Lurton of another corporation in *Young* v. *South Tredeger Co.,* 85 Tenn. 189, [4 Am. St. Rep. 752, 2 S. W. 202], "its whole tangible and ponderable substance is in this state." It is a foreign corporation only in the sense that it is created in another state and continues to enjoy corporate life by permission of that state. In every other sense, it is solely a California corporation. So far as it in fact does or can do business at all, it does it solely by permission of this state, and within its borders. Under such circumstances its residence in Arizona, or anywhere else outside of California, is the merest fiction. As to such a corporation, so organized and situated in regard to all its business and property, we can see no good reason why, as was said in the case last cited, "the fiction as to the *situs* of the corporation entity ought not to yield in the interest of justice to the actual facts," to an extent sufficient to warrant the holding that the corporation is sufficiently a resident of this state to bring it within the rule applicable to domestic corporations as to the *situs* of its stock.

The relief sought by plaintiff against Latham is in the

nature of specific performance of a contract for the delivery of certain mining stock, in a case where all the conditions to be performed by him have been performed, and nothing remains to be done other than the mere delivery by Latham of the stock. If we are correct in what we have said as to the *situs* of this stock, we have an action for specific performance as against a party who is a non-resident and cannot be personally served with summons, in a case where the whole subject-matter of the contract is within this state, and nothing remains to be done but to compel a transfer thereof. While it is well settled that a decree for specific performance of a contract operates primarily *in personam,* yet in a limited and qualified sense it may also be said to operate *in rem* when property to be transferred under the contract is within the jurisdiction of the court, but the defendant is absent therefrom. (See 26 Am. and Eng. Ency. of Law, p. 132.) Where the whole relief sought consists in the mere delivery of property within the jurisdiction of the courts of a state to the party entitled thereto under a contract, the proceeding is in a sense one *in rem,* sufficiently so, in our judgment, to give such courts jurisdiction to effectuate a delivery as against a non-resident defendant. In the leading case of *Pennoyer* v. *Neff,* 95 U. S. 727, speaking of substituted service by publication, the United States supreme court, after saying that such service may be sufficient where property is once brought under the control of the court by seizure or some equivalent act, said: "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same." (See, also, *Boswell's Lessee* v. *Otis,* 9 How. 348.) In the case of *Rourke* v. *McLaughlin,* 38 Cal. 196, it was held, as one of the grounds of the decision, that specific performance would be decreed "whenever the parties, or the subject-matter, or so much thereof as is sufficient to enable the court to enforce its decree, is within the jurisdiction of the court." The contract there involved was one for the sale of land situate in this state, and the claim was that as the vendor was a resident of Ireland and beyond the jurisdiction of the court he could not be compelled to execute a conveyance. The court said that his absence will neither prevent his making a deed voluntarily,

"nor prevent the courts of this state from compelling the deed to be given by the plaintiff himself, or by a commissioner appointed to act in his place," and that "specific performance" could be compelled, the whole subject-matter of the contract being within the jurisdiction of the courts of this state. Where nothing remains to be done under the contract but the transfer of property within this state by the non-resident, there is no difference in substance between the position of the plaintiff and the position of a creditor seeking to subject property of a non-resident by attachment proceedings to the payment of his asserted claim against such non-resident. In each, the plaintiff asserts his claim against the non-resident, the validity of which must be established in the proceeding. It is elementary that the claim may be so established in the latter case against a non-resident only constructively served with summons to an extent sufficient to enable plaintiff to devote the property of the defendant that is in this state and has been seized on attachment, to the payment of his claim. As to that property, his proceeding is one *in rem*. In the former case, the claimant is doing substantially the same thing. Specific property in this state is sought by the complaint, property in which by his full performance of his contract plaintiff has acquired an equitable interest, and the mere bringing of his action is equivalent to a seizure of the property for the purposes of the suit. (See *Heidritter* v. *Elizabeth Oil Co.,* 112 U. S. 301, [5 Sup. Ct. 135].) No claim has been made in this case that the court was without jurisdiction as to Latham if a proper case for specific performance has been made to appear.

It is urged that there is a total lack of allegation and proof of facts necessary to bring the action within the exception to the rule that specific performance will not lie to compel a transfer of personal property, and nothing to overcome the presumption that an agreement to transfer personal property can be relieved by pecuniary compensation. (Civ. Code, sec. 3387.)

The right of a court of equity to decree specific performance "does not turn at all upon the question whether the contract relates to real or personal property, but altogether upon the question whether the breach complained of can be adequately compensated in damages." (*Senter* v. *Davis,* 38

Cal. 450, 452; *Fleishman* v. *Woods,* 135 Cal. 261, [67 Pac. 276].) The presumption being that an agreement to transfer personal property can be so compensated, it is incumbent on one seeking specific performance in equity to allege facts showing the inadequacy of the legal remedy by way of damages. It is, however, not necessary to allege in terms that the legal remedy is inadequate, or that the breach cannot be adequately compensated in damages. Indeed, this might be held to be insufficient as being the allegation of a mere conclusion in a case where allegations of the specific facts justifying the conclusion were required. If the facts alleged and proved sufficiently show the inadequacy of the legal remedy, it is enough. If the property is of such a nature that the value of the performance cannot be estimated in money with any degree of certainty and taken in lieu of it, the inadequacy of the legal remedy is apparent. (*Senter* v. *Davis,* 38 Cal. 450.) The complaint here shows that the stock was that of a mining corporation, whose property consisted of certain mining claims of unknown value. It is not in terms alleged that this stock had not at the time of the commencement of this action an established market value, but it is apparent enough that it cannot have such a value. In *Treasurer* v. *Commercial etc. Co.,* 23 Cal. 390, this court had occasion to consider the question of the sufficiency of a complaint in this respect, in an action for specific performance of a contract for the delivery of certain mining stock. A complaint which showed no more than that the stock was of a corporation formed for the purpose of mining for coal was held insufficient. It was pointed out that the only basis for the rule that specific performance will not be enforced for the transfer of stock is that the stock is capable of an exact compensation, and that the rule applied more particularly to public stocks, such as are commonly bought and sold in the market. The court said: "In the peculiar condition of business and mining operations in this state, where numerous mining and other corporations are in existence, whose stock is often of fluctuating and uncertain value, and where certain kinds of stocks have a peculiar value to those acquainted with their affairs, where the market value of stocks, if any they have, is often difficult to substantiate by competent evidence, and where the risk of the personal responsibility of indi-

viduals and corporations is so great, courts should be liberal in extending the full, adequate and complete relief afforded by a decree of specific performance. In the view we have thus taken of the principles which should govern cases of this kind, the action of the court below was erroneous." This case has been approved and cited many times. It constitutes sufficient authority for the proposition that the complaint and findings in the case at bar show a case in which the legal remedy afforded by an action for damages may be held to be inadequate.

It is further urged that neither the complaint nor the decision of the trial court shows that Latham received an adequate consideration for the contract, or that the contract as to him was just and reasonable, in either of which cases the law specifies that specific performance cannot be enforced. (Civ. Code, sec. 3391.) Again it should be noted that it is not required to be alleged in the complaint *in hæc verba* that the contract was supported by an adequate consideration and is as to the defendant fair and just, but that it is sufficient to set forth facts from which the court is warranted in concluding that the consideration was adequate and the contract fair and just as to the defendant. (See *Stiles* v. *Cain,* 134 Cal. 172, [66 Pac. 231]; *White* v. *Sage,* 149 Cal. 616, [87 Pac. 193].) Allegations of the complaint that were found to be true by the trial court fairly showed that the parties were dealing in reference to stock that had no value in the market and could be sold at as low a price even as ten cents per share only by having a promoter who could induce parties to see enough merit in the undeveloped mining claims to invest their money therein, and that the sale of some of the treasury stock was absolutely essential to any development of the claims and the giving of any value to Latham's stock. The agreement of Latham was practically to give one quarter of his original allotment of stock, or one half of the stock that he had retained for himself, to plaintiff if he would go into another state and sell a substantial amount of treasury stock for the purpose of obtaining money wherewith to do necessary development work and thus make the stock owned by him worth something. For services that resulted in producing the money absolutely essential to the development of mining claims that might, in fact, prove to be worth much

or nothing, he was willing to give plaintiff one half of his remaining interest in the claims. Under such circumstances, no one would be warranted in saying that the services contracted for did not constitute an adequate consideration or that the contract was not fair and just. The facts alleged and found are of such a nature that it is apparent that there is no standard by which this contract as to defendant can be held to be unfair or unjust or based on an inadequate consideration. It further appears that Latham allowed plaintiff, relying on the contract, to go to Chicago and there to give his time and services in performance of his part of the contract for a period of more than six months, and never intimated to plaintiff that he thought the consideration inadequate or the contract in any way unfair or unjust. The case of *Fleishman* v. *Woods*, 135 Cal. 256, [67 Pac. 276], is sufficient authority for the ruling that sufficient facts are alleged and shown to establish that Latham received an adequate consideration for his contract and that it was not as to him either unjust or unreasonable.

We are of the opinion that the complaint and the findings showed a sufficient case for specific performance as against Latham. If this be so, in view of what we have said the judgment in favor of defendant corporation cannot be sustained.

The judgment and order denying a new trial are reversed.

Sloss, J., and Shaw, J., concurred.